**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GILBERT ZAMORA,

Plaintiff,

vs. No. CIV 03-743 JB/RLP

CITY OF BELEN, et al.

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Michael Valdez' Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity, filed October 19, 2004 (Doc. 79). The Court took the motion under advisement and did not rule at that time. The primary issue is whether Defendant Michael Valdez is entitled to absolute or qualified immunity on Plaintiff Gilbert Zamora's § 1983 claim of malicious prosecution and false arrest. The Court, having reviewed the briefing and the relevant case law, will grant Valdez' motion on the § 1983 claim. The Court will remand all remaining claims -- all of which sound in state law -- to state court.

## FACTUAL BACKGROUND

There is no genuine issue as to any material fact. Zamora's lawsuit stems from his arrest. Defendant Tanya Baldonado[1] was the alleged victim of Zamora's alleged rapes and other alleged criminal acts.

---

[1] In his original complaint, Zamora brought suit against "Tanya Baldonado." On October 24, 2003, however, Baldonado filed a stipulated motion, requesting that the Court change the caption to "Tanya Frazer," to reflect a change in her name. Thus, the Court entered an Order changing the caption to "Tanya Frazer." Order at 1, filed October 27, 2003 (Doc. 25). Because many of the exhibits refer to Tanya Baldonado, however, the Court will refer to the name provided in the supporting document. Tanya Baldonado and Tanya Frazer, however, are the same person.

In 2000, the District Court of the State of New Mexico, Thirteenth Judicial District Court, summoned and convened a grand jury for Valencia County. See Affidavit of Margaret Claire Harwell ¶ 4, at 1 (executed September 21, 2004)(hereinafter "Harwell Aff."). In connection with the foregoing grand jury proceedings, the state court appointed Assistant Attorney General Margaret Claire Harwell as an Aide to the grand jury. See NMSA 1978 § 31-6-7; Harwell Aff. ¶ 8, at 2; In the Matter of the Valencia County Grand Jury Convened on November 8, 1999 and Thereafter, Oath of M. Claire Harwell, filed December 9, 1999. In connection with the grand jury that the state court convened, the District Attorney for the Thirteenth Judicial District also appointed Harwell as Special Prosecutor. See Harwell New Mexico v. IMO: Special Investigation of The Belen Police Dep't, Appointment of Special Prosecutor, filed December 15, 1999; Harwell Aff. ¶ 5, at 1.

Michael Valdez, a Special Agent of the New Mexico Attorney General's Office, see Second Affidavit of Michael Valdez ¶ 4, at 1 (executed September 21, 2004)(hereinafter "Valdez Second Aff."), investigated Zamora's alleged crimes, see Second Affidavit of Margaret Claire Harwell ¶ 5, at 2 (executed December 17, 2004)(hereinafter "Harwell Second Aff."). Valdez reported to Harwell all pertinent information and documents that he uncovered during the course of his investigation into Zamora's alleged crimes. See Harwell Second Aff. ¶ 5, at 2; Third Affidavit of Michael Valdez ¶ 3, at 1 (executed December 20, 2004)(hereinafter "Valdez Third Aff."). During the course of the grand jury investigation, Harwell issued a target letter of Zamora, notifying him of his status as a target of the grand jury proceedings and of his right to testify at the proceedings. See Letter from Margaret Claire Harwell to Gilbert Zamora at 1 (dated August 14, 2000); Harwell Aff. ¶¶ 6, 7, 10, at 1-2.

At all material times, Harwell was the "prosecuting attorney assisting the Grand Jury" within the meaning of the relevant New Mexico law. See NMSA 1978, §§ 31-6-1 to -15; Harwell Aff. ¶

9, at 2. As the Special Prosecutor and court-appointed Aide to the grand jury in connection with the grand jury proceedings that resulted in Zamora's indictment, Harwell made the decisions of which witnesses to call before the grand jury, what questions to ask the witnesses, what testimony to elicit from the witnesses, what evidence to present to the grand jury, what evidence was "exculpatory" within the meaning of New Mexico law, and which of the persons identified by Zamora should be called to testify before the grand jury. See Harwell Second Aff. ¶ 3, at 1-2; Letter from Thomas C. Esquibel to Margaret Claire Harwell at 1 (dated August 16, 2000)(Zamora's list of allegedly exculpatory witnesses that Zamora presented to Harwell with "demand" addressed to Harwell)(hereinafter "Esquibel's Letter"). Zamora listed the "exculpatory" witness, Michelle Lovato, whom Zamora accuses Valdez of having "intentionally excluded" from the grand jury, in his letter to Harwell with his "demand" that Harwell present Lovato to the grand jury. See Esquibel's Letter at 1.

Valdez, Zamora and Baldonado were among the witnesses who testified before the grand jury. See Harwell Aff. ¶ 11, at 11; Transcript of Grand Jury Proceedings at 8-26 (dated August 16, 2000)(containing an excerpt of Baldonado's testimony)(hereinafter " Grand Jury Proceedings, August 16, 2000"). Baldonado testified to the grand jury about various specific occasions, at the City Police Department, when her supervisor, Zamora, against her will, restrained her and forcefully inserted his finger into her vagina and attempted to insert his penis into her vagina. See Grand Jury Proceedings, August 16, 2000 at 8:20 - 13:22 (Baldonado). She also testified that, on May 19, 1999, Zamora brought her to his house on the premise of giving her a belated Christmas gift, and, while inside the house, he allegedly inserted his penis into her vagina against her will. See id. at 17:15 - 19:23. She testified that she was afraid of Zamora, that she had attempted to resist his assaults, and that she tried

to commit suicide on multiple occasions as a result of the assaults. See id. at 8:1 - 24:17.

On or about August 23, 2000, the grand jury returned an indictment by which it charged Zamora with the commission of twenty-one felonies, including Criminal Sexual Penetration, Kidnapping, and False Imprisonment. See New Mexico v. Zamora, Cause No. D-1314-CR-00-260, Indictment, filed August 23, 2000; Harwell Aff. ¶ 12, at 2; Affidavit of Jolene Altwies ¶ 5, at 1 (executed September 20, 2004)(hereinafter "Altwies Aff."). Valdez contends that the grand jury indictment against Zamora was based upon a majority vote by the grand jury and the grand jury's finding that probable cause existed to accuse Zamora of the twenty-one felonies charged. See NMSA 1978 §§ 31-6-9 to -10; Rule 5-201D NMRA; Harwell Aff. ¶ 13, at 2. Zamora, however, maintains that the grand jury based its indictment on Valdez' investigation, presentation, and testimony, which omitted material exculpatory evidence known to him and facts which demonstrated that the claims were false and that Zamora was innocent. See Affidavit of Larry Gallegos ¶¶ 4-22 (executed December 2, 2004); Internal Affairs Investigation at 6-7, 14-16; Grand Jury Proceedings, August 16, 2000, at 78, 83 (Valdez); Affidavit of Gilbert Zamora ¶¶ 5-24, at 1-4 (executed December 2, 2004)(hereinafter "Zamora Aff.").

Zamora alleges that Valdez failed to present "exculpatory evidence" to the grand jury: (i) parts of the City of Belen Police Department Internal Affairs investigation report that Police Lt. Mike Chavez prepared; (ii) the audiotape recordings Zamora made of conversations between him and Baldonado; (iii) the testimony of a witness, Michelle Lovato; and (iv) and "sexual horseplay" between Zamora and Baldonado. Zamora does not dispute that he knew about the allegedly exculpatory evidence. See Zamora Aff. ¶¶ 18, 19, 22-24.

Zamora contends that, by its return of the indictment, the grand jury initiated the criminal

judicial proceedings against him. See New Mexico v. Zamora, Cause No. D-1314-CR-00-260; Harwell Aff. ¶ 14, at 2; Rules 5-201A(3), 5-201D NMRA. Zamora contends that Valdez maliciously initiated the criminal proceedings. Zamora alleges that, during the course of Valdez' investigation of Baldonado's allegations of rape and false imprisonment, he obtained and delivered a target letter to Zamora's employer. See Zamora Aff. ¶ 15, at 3. Zamora contends that Valdez learned of material exculpatory facts that negated probable cause. See id. ¶¶ 5-24, at 1-4; Gallegos Aff. ¶¶ 4-22; Internal Affairs Investigation at 6-7, 14-16; Grand Jury Proceedings, August 16, 2000, at 78, 83 (Valdez).

Based upon the grand jury indictment, the state court issued a bench warrant expressly commanding "any officer authorized to execute this warrant" to arrest Zamora and bring him before the court "forthwith" to answer the charges in the indictment. Bench Warrant at 1; Harwell Aff. ¶ 15, at 2-3; Altwies Aff. ¶ 6, at 1-2; Valdez Second Aff. ¶ 13, at 2. In the warrant, the state court set a $100,000.00 cash bond. See Bench Warrant at 1; Harwell Aff. ¶ 15, at 2-3; Altwies Aff. ¶ 6, at 2-3; Valdez Aff. ¶ 13, at 2.

Valdez contends that the bench warrant constituted a facially valid order, authorizing law enforcement officers to arrest Zamora. See Harwell Aff. ¶ 16, at 1; Altwies Aff. ¶ 7, at 2; Valdez Second Aff. ¶ 14, at 2. Zamora responds that Valdez' intentional omission of substantial direct and material exculpatory evidence tainted the indictment and warrant. See Gallegos Aff. ¶¶ 4-22, at 1-5; Internal Affairs Investigation at 6-7, 14-16; Grand Jury Proceedings, August 16, 2000, at 78, 83 (Valdez); Zamora Aff. ¶¶ 5-24, at 1-4. In addition to her own admissions of sexual horseplay with Zamora shortly after the alleged rape of May 19, 1999, several independent witnesses verified that Baldonado was laughing and having fun chasing Zamora around the police department office. Witness and records clerk, Michelle Lovato, stated in her interview that "she heard Tanya talking to

Gilbert on the phone one day telling Gilbert that she could make Gilbert cum in eight (8) seconds if she was on top or something like that. . . . [She] has heard both Gilbert and Tanya talk to each other like that before." Interview with Michelle Lovato at 15. See Conclusion, Internal Affairs Investigation at 10.

At all material times, the New Mexico Attorney General's Office employed Valdez as a Special Agent. At all material times, Valdez was a duly commissioned law enforcement officer and was authorized to execute warrants. See Valdez Second Aff. ¶ 4, at 1. At all material times, Harwell represented the State of New Mexico as the prosecuting attorney in the grand jury proceedings and the subsequent prosecution. See New Mexico v. Zamora, No. D-1314-CR-00-260; Harwell Aff. ¶ 20, at 3. In connection with the grand jury proceedings and subsequent criminal prosecution of New Mexico v. Zamora, Valdez, who is not an attorney, never served as a prosecuting attorney. See Valdez Second Aff. ¶¶ 8-10, at 2.

After the state court issued its bench warrant, Harwell brought the warrant's existence and contents to the attention of the Attorney General's Special Agents, including Valdez and Special Agent Jolene Altwies. See Harwell Aff. ¶ 17, at 3; Valdez Second Aff. ¶ 13, at 2. On August 24, 2000, Valdez and Altwies, who also was a commissioned law enforcement officer authorized to execute warrants, executed the state district court's bench warrant and arrested Zamora. See Harwell Aff. ¶ 18, at 3; Altwies Aff. ¶ 8, at 2; Valdez Second Aff. ¶ 15, at 3; New Mexico v. Zamora, Arraignment at 1 (dated August 25, 2000). Pursuant to the Court's order and $100,000 cash bond, the two officers took Zamora into custody and transported him to the Valencia County Jail for booking. See Harwell Aff. ¶ 18, at 3; Altwies Aff. ¶ 8, at 2; Valdez Second Aff. ¶ 15, at 3; New Mexico v. Zamora, Arraignment at 1.

Valdez maintains that, at the time he and Altwies arrested Zamora, they were acting pursuant to the district court's order and command reflected in the facially valid bench warrant. See Altwies Aff. ¶ 9, at 2; Valdez Second Aff. ¶ 16, at 3; Bench Warrant at 1. Subsequent to Zamora's arrest and incarceration pursuant to the bench warrant, the district court arraigned Zamora and set conditions of release, including a modified bond. See Harwell Aff. ¶ 19, at 3; New Mexico v. Zamora, Arraignment at 1. Effective March 30, 2001, Valdez resigned his employment with the Attorney General's Office, to take private employment. See Valdez Second Aff. ¶ 18, at 3.

In 2001, during the course of the underlying criminal proceedings in state court, Zamora filed a motion to dismiss the indictment. See New Mexico v. Zamora, No. D-1314-CR-2000260, Memorandum Opinion and Order Denying Defendant's Motion to Dismiss, filed May 17, 2001 (13th Judicial Dist. Ct., County of Valencia, N.M.). Zamora's 2001 motion was based on the State's failure to present exculpatory evidence to the grand jury, including the tape-recorded conversations between Zamora and Baldonado; the State's refusal to allow Zamora's allegedly "exculpatory" witness to testify, and Valdez' allegedly prejudicial grand jury testimony. The state district court, however, after an evidentiary hearing, briefs, and oral argument, denied Zamora's motion on the merits. See New Mexico v. Zamora, Memorandum Opinion and Order Denying Defendant's Motion to Dismiss at 9.

The failure to play the audiotape to the grand jury was a specific subject of the state-court motions. The Honorable Camille M. Olguin, State District Judge, found:

> HARWELL listened to the tape and took notes. Agent MICHAEL VALDEZ was present and also listened to the tape. HARWELL made the decision that the information on the tape did not directly negate [Plaintiff Zamora's] guilt. The tapes were not presented to the Grand Jury on August 23, 2000. HARWELL explained to the Grand Jury that no material on the tape was required to be presented.

Id. at 4. The state court concluded that the tape, which contained multiple conversations between

Zamora and Baldonado, did not constitute exculpatory evidence within the definition of the New Mexico statutes, and further concluded that "[f]ailure of the Assistant Attorney General to present such [taped] statements to the Grand Jury did not result in a breach of the [prosecutor's] duty to assist the Grand Jury fairly and impartially." Id.

Subsequently, on or about June 12, 2001, after trial, a Petit Jury acquitted Zamora of all charges. See Complaint for Malicious Abuse of Process, Defamation and Damages ¶ 14, at 3, filed June 3, 2003 (13th Judicial Dist. Ct., County of Valencia, N.M.)(hereinafter "Complaint").

**PROCEDURAL BACKGROUND**

In the Complaint's caption, Zamora sues Valdez "individually and in his representative capacity." Baldonado, whom Zamora also sued in this case, and the City of Belen have been dismissed. See Order at 1, filed February 27, 2004 (Doc. 61).

In his Complaint, Zamora asserts four substantive claims: a claim against Valdez pursuant to 42 U.S.C. § 1983 (Count IV), and state-law tort claims for malicious abuse of process (Count I), defamation (Count II), and false arrest (Count III). Zamora also makes a separate, non-substantive claim for attorney fees and costs pursuant to 42 U.S.C. § 1988 (Count V).

In his Complaint for Malicious Abuse of Process, Defamation and Damages, Zamora implies that Valdez made a warrantless arrest. See Complaint ¶ 32, at 6. Zamora expressly alleges that Valdez arrested him without probable cause, see id. ¶ 31, at 5, and without having seen "any misdemeanors committed in [Valdez'] presence," id. ¶ 32, at 6. See id. ¶¶ 6, 38 (1), (2).

Regarding his § 1983 claim (Count IV), Zamora makes two material allegations: (i) that "Zamora was unlawfully arrested without probable cause;" and (ii) that "Zamora was maliciously prosecuted without probable cause[,]" in violation of the Fourth, Fifth, and Fourteenth Amendments.

Complaint ¶ 38, at 7.

Zamora's § 1983 claim (Count IV) also alleges that it was the "policy or custom of the State of New Mexico to inadequately and improperly investigate complaints" and "inadequately supervise and train its law enforcement officers, including [Valdez]." Complaint ¶¶ 38(3), (4), at 7. The Court previously dismissed "all claims" against Defendant State of New Mexico. Memorandum Opinion and Order at 1-4, filed August 6, 2003 (Doc. 12). Thus, this opinion and order does not address those aspects of Zamora's § 1983 claim.

Valdez moves the Court, pursuant to rule 56(b) of the Federal Rules of Civil Procedure, for a summary judgment in his favor against Zamora based in part on the doctrines of absolute immunity and qualified immunity. Valdez contends that there is no genuine issue on any material fact and that he is entitled to judgment on all counts as a matter of law.

**STANDARD FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. at 323. The moving party can meet this burden by highlighting to the court an insufficiency of evidence as to an essential element of the nonmovant's claim. See id. Once met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmovant. See Adler v. Wal-Mart Stores,

Inc., 144 F.3d 664, 671 (10th Cir. 1998)(citations omitted; citing Celotex Corp. v. Catrett, 477 U.S. at 324). The non-moving party "must go beyond the pleadings and identify specific facts which demonstrate the existence of an issue to be tried by the jury." Martinez v. Am. Oil & Supply Co., No. 99-2228, 2000 WL 807247, at **3 (10th Cir. June 23, 2000)(unpublished decision).

For the purposes of summary judgment, the court assumes the non-moving party's evidence to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. A "genuine" factual dispute requires the non-moving party to show more than a mere scintilla of evidence to overcome a motion for summary judgment. Id. at 252.

The court may grant summary judgment "if the non-moving party's evidence is merely colorable[] or is not significantly probative." Id. at 250-51 (citations omitted). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. at

251-52.

**ABSOLUTE IMMUNITY UNDER § 1983**

Absolute immunity is recognized as it existed in common law, but only so far as necessary to protect the judicial process. Although § 1983 admits of no immunities on its face, the Supreme Court of the United States has ruled that Congress did not aim -- when it enacted the original version of § 1983 -- to abrogate those common law immunities that existed in 1871. See Imbler v. Pachtman, 424 U.S. 409, 417-18 (1976); Pierson v. Ray, 386 U.S. 547, 554-55 (1967). An official, who asserts absolute immunity from § 1983 liability, shoulders the burden of establishing the existence of immunity for the function in question. See Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 & n.4 (1993).

Because qualified immunity is presumed to be sufficient to protect public officials in the exercise of their discretionary duties, see Burns v. Reed, 500 U.S. 478, 486-87 (1991), absolute immunity extends only so far as necessary to protect the judicial process, see id. at 485-87. As the Tenth Circuit has explained:

> The Supreme Court has endorsed a "functional" approach to questions concerning the application of common-law tort immunities to individuals in § 1983 actions: "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." Forrester v. White, 484 U.S. 219, [227] . . . (1988) (emphasis in original). The extent of government officials' immunity depends upon the likely effect their exposure to liability will have on the operation of effective government in a particular context, balanced against the potential for a deprivation of individual rights in that context.

Valdez v. City and County of Denver, 878 F.2d 1285, 1287 (10th Cir. 1989). In Imbler v. Pachtman, the Supreme Court "address[ed] the § 1983 liability of a state prosecuting officer" and held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit

for damages under § 1983." Imbler v. Pachtman, 424 U.S. at 430. Although "the prosecutor is fully protected by absolute immunity when performing the traditional functions of an advocate," Kalina v. Fletcher, 522 U.S. 118, 131 (1997), a prosecutor is not entitled to absolute immunity "for making false statements of fact in an affidavit supporting an application for an arrest warrant," id. at 120. By making such statements, the prosecutor is serving as a complaining witness -- as opposed to an advocate for the state -- and thus does not enjoy the protections of absolute immunity while functioning in such a capacity. See id. at 129-31.

In Briscoe v. LaHue, 460 U.S. 325 (1983), the Supreme Court held that a witness -- including a police officer -- who testifies at a criminal trial is entitled to absolute immunity. See id. at 343 ("Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties."). The Tenth Circuit, in Anthony v. Baker, 955 F.2d 1395 (10th Cir. 1992)("Anthony v. Baker II"), addressed, in the § 1983 malicious prosecution context, "the scope of [an officer's] immunity for his grand jury testimony." Id. at 1398. The Tenth Circuit noted that "the common law distinguished between defamation actions and actions for malicious prosecution." Id. at 1399. In defamation actions, a witness is entitled to absolute immunity if "the allegedly defamatory statements were relevant to the judicial proceeding." Id. (quotation omitted).

> In a malicious prosecution action, however, the plaintiff attempts to hold the complaining witness "liable for his role in initiating a baseless prosecution. . . ." Id. "Complaining witnesses were not absolutely immune at common law." Malley v. Briggs, 475 U.S. 335 . . . (1986). Thus, in Malley [v. Briggs], the Supreme Court denied absolute immunity to a police officer who wrongfully initiated a criminal proceeding by applying for an arrest warrant. Id. "In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." Id. (citations omitted).

> * * * *
>
> The term "complaining witness" describes the person (or persons) who actively instigated or encouraged the prosecution of the plaintiff. Proof of the defendant's role in instituting the criminal prosecution of the plaintiff is an essential element of a malicious prosecution claim. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 119 (5th ed. 1984); Lounder v. Jacobs, 119 Colo. 511, 205 P.2d 236 (1949).

Anthony v. Baker II, 955 F.2d at 1399 & n.2.

The plaintiff in Anthony v. Baker brought a § 1983 malicious prosecution claim against the deputy sheriff who investigated the alleged criminal conduct and who served as the special investigator in the grand jury investigation. See id. at 1396; Anthony v. Baker, 767 F.2d 657, 659-660 (10th Cir. 1985)("Anthony v. Baker I"). In his complaint, the plaintiff challenged the deputy's "motivation for his actions prior to the grand jury proceeding and [the deputy's] conduct during the grand jury proceeding," including that, before the grand jury proceedings, the deputy allegedly "deliberately created false evidence and distorted reports and failed to make a full and fair disclosure of his investigation for the purpose of misleading and misinforming the prosecutor and the grand jury." Anthony v. Baker II, 955 F.2d at 1399 & n.3. The Tenth Circuit also noted that, "[u]nlike the plaintiff in Malley [v. Briggs], [the Anthony v. Baker plaintiff] does not allege that [the deputy] initiated the prosecution by maliciously submitting a criminal complaint." Id. at 1399. The Tenth Circuit then held, however, that this "factual distinction" is "insignificant," because the Tenth Circuit is "not convinced that the common law granted absolute immunity to a complaining witness who initiated--at least in part--a baseless prosecution by giving false testimony at a grand jury proceeding." Id. The Tenth Circuit held that the deputy, "as a defendant in a § 1983 suit for malicious prosecution, should be denied absolute immunity for his grand jury testimony only if he is found to be a

complaining witness and only if the testimony is relevant to the manner in which he initiated or perpetuated the prosecution of the plaintiff." Id. at 1401.

For the last fifteen years, the law in the Tenth Circuit has been that law enforcement officers are also entitled to absolute "quasi-judicial" immunity for their actions in executing facially valid warrants, writs, and other court orders, such as bench warrants. See Whitesel v. Sengenberger, 222 F.3d 861, 867-70 (10th Cir. 2000)(recognizing that, "[a]lthough absolute immunity generally extends to non-judicial officers performing discretionary judicial acts, some circuits, including our own, have held that those performing ministerial acts at the direction of a judge are also entitled to absolute immunity," and holding that a pretrial service officer, who, acting as a bond commissioner, issued a Temporary Restraining Order, was entitled to qualified immunity); Turney v. O'Toole, 898 F.2d 1470, 1472 (10th Cir. 1990)(explaining that, "just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, official[s] charged with the duty of executing a facially valid court order enjoy[] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order," and holding that a state prison superintendent and psychologist were entitled to absolute immunity when they transferred the defendant to the facility pursuant to a facially valid court order)(quotations and citations omitted)(alteration in the original); Valdez v. City and County of Denver, 878 F.2d at 1287 (holding that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order"); Jacobs v. Dujmovic, 752 F. Supp. 1516, 1524-25 (D. Colo. 1990)(holding that law enforcement officers were entitled to absolute immunity for executing a writ of restitution); Dickerson v. Leavitt Rentals, 995 F. Supp. 1242, 1249 (D. Kan. 1998). See also Henry v. Farmer City State Bank, 808 F.2d 1228, 1238-39 (7th Cir. 1986)(citing cases in 1st, 3d, 5th,

and 8th Circuits, all in accord, and explaining "police officers, sheriffs, and other court officers who act in reliance on a facially valid court order are entitled to quasi-judicial immunity from suit under § 1983 for damages"). Absolute immunity "defeats a suit at the outset . . . ." Imbler v. Pachtman, 424 U.S. at 419 n.13. And it is irrelevant to the executing officer's absolute immunity from suit under § 1983 if the court order violates a statute, or is erroneous or even unconstitutional, as long as it is "facially valid." Turner v. O'Toole, 898 F.2d at 1473 ("'Facially valid' does not mean 'lawful.'). As a policy matter, law enforcement officers "must not be required to act as pseudo-appellate courts scrutinizing the orders of judges" because "[t]he public interest demands strict adherence to judicial decrees." Valdez v. City and County of Denver, 878 F.2d at 1289.

The Tenth Circuit, however, has stated that:

> "A prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial -- none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision . . . . *If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.*"

Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004)(quoting Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir.1988)(emphasis in original)). See Robinson v. Maruffi, 895 F.2d 649, 656 (10th Cir. 1990). In Robinson v. Maruffi, police officers, who purposefully concealed and misrepresented material facts to the district attorney, appealed a jury conviction for conspiracy for malicious prosecution. The Tenth Circuit rejected as "disingenuous" police officers' "argument that their misconduct is shielded by the acts of the prosecutor, the grand jury, and the trial and appellate courts . . . ." 895 F.2d at 655-56. As the United States Court of Appeals for the Seventh Circuit explained: "[S]imply obtaining an indictment is not enough to insulate state actors from an action for malicious

prosecution under § 1983." Hand v. Gary, 838 F.2d 1420, 1426 (5th Cir. 1988). The Seventh Circuit noted that even in cases where indictments were obtained, the state actors were not insulated from § 1983 liability because "the finding of probable cause remained tainted by the malicious actions of the government officials." Id.

**LAW ON QUALIFIED IMMUNITY AND FALSE ARREST**

Under 42 U.S.C. § 1983, a state official sued in his individual capacity is qualifiedly immune from suit and liability for damages if his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Id. at 807 (quoting Butz v. Economou, 438 U.S. 478, 506 (1978)). Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. at 341. See Hidahl v. Gilpin County Dep't of Soc. Servs., 938 F.2d 1150, 1155 (10th Cir. 1991)(recognizing there is a "presumption in favor of immunity for public officials acting in their individual capacities").

A state law enforcement officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause to arrest existed at the moment the arrest was made. See Hunter v. Bryant, 502 U.S. 224, 227-28 (1991); Anderson v. Creighton, 483 U.S. 635, 641 (1987); Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995). The law does not require an officer to be perfect. "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." Hunter v. Bryant, 502 U.S. at 227 (quotation and citation omitted). Qualified immunity "gives ample room for mistaken judgments," id. (quoting Malley v.

Briggs, 475 U.S. at 343)(quotation omitted), and "reasonable error" made by officers, Hunter v. Bryant, 502 U.S. at 229.

In addition, once a defendant asserts qualified immunity, the burden shifts and the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Ctr., Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988)("[P]laintiff carries the burden of convincing the court that the law was clearly established."). Accord Connolly v. Beckett, 863 F. Supp. 1379, 1383 (D. Colo. 1994). To overcome the qualified immunity defense, the plaintiff must identify a clearly established statutory or constitutional right of which a reasonable person would have known, and then allege facts to show that the defendant's conduct violated that right.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). See Davis v. Scherer, 468 U.S. 183, 194-96 (1984); Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995); Yount v. Millington, 117 N.M. 95, 101, 869 P.2d 283, 289 (Ct. App. 1993). Moreover, the law allegedly violated must be a right that the United States Constitution or federal law created. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Baker v. McCollan, 443 U.S. 137, 140 (1979). An alleged violation of state law does not create a § 1983 claim. See Davis v. Scherer, 468 U.S. at 194-196; Baker v. McCollan, 443 U.S. at 144, 146; D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1375-76 (3d Cir. 1992)("Section 1983 liability arises only from a violation of federal statutory or constitutional rights under color of state

law."); Robison v. Via, 821 F.2d 913, 922-23 (2d Cir. 1987)(citing Davis v. Scherer, 468 U.S. at 194-96).

"Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, the shield of qualified immunity is lost." Golino v. City of New Haven, 950 F.2d 864, 871 (2d Cir. 1991)(citations omitted). Significantly, the Supreme Court has emphasized that "[v]alidity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. " Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475 U.S. at 341.

**STATE LAW REGARDING GRAND JURIES**

"[T]he grand jury only has the power to accuse, not to convict." New Mexico v. Juarez, 109 N.M. 764, 768, 790 P.2d 1045, 1049 (Ct. App. 1990)(explaining statutory definition of exculpatory evidence). Moreover, "[a]n indictment does not create a presumption of guilt; all charges must later be proven at trial beyond a reasonable doubt." Id.

The prosecuting attorney who assists the grand jury has the duty to call and examine witnesses and to present direct exculpatory evidence to the grand jury. See United States v. Agurs, 427 U.S. 97, 114 (1976); New Mexico v. Hewitt , 108 N.M. 179, 183, 769 P.2d 92, 96 (Ct. App. 1988)(requiring prosecutor to present "direct exculpatory evidence" to grand jury, but stating that

prosecutor is "invested with wide discretion as to the selection and presentation of [such] evidence"); NMSA 1978, § 31-6-11(B). In the context of a New Mexico grand jury proceeding, the New Mexico courts have defined exculpatory evidence as evidence that "directly negates the guilt of the target," as "actual knowledge gained through a witness' senses," and as "evidence which, if believed, proves the existence of the fact without inference or presumption." New Mexico v. Augustin M., 2003-NMCA-065, ¶ 22, 133 N.M. 636, 642, 68 P.2d 182, 188 (Ct. App. 2003)(alteration in the original)(quotations omitted).

Under New Mexico law, moreover, a grand jury's finding of probable cause is not subject to judicial review except in one instance: "The sufficiency of the evidence upon which an indictment is returned shall not be subject to review absent a showing of bad faith on the part of the prosecuting attorney assisting the grand jury." NMSA 1978, § 31-6-11(A). In similar vein, under the law of § 1983, "[i]t is well-established that a plaintiff may not relitigate the issue of probable cause in a civil action once the issue has been determined in a criminal action." Williams v. Weber, 905 F. Supp. 1502, 1507-08 (D. Kan. 1995).

**DUTY TO DISCLOSE EXCULPATORY EVIDENCE**

As the Supreme Court of the United States stated in Brady v. Maryland, 373 U.S. 83 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 1196-97. Further, United States v. Agurs, 427 U.S. 97 (1976), establishes that the prosecutors have a duty to disclose evidence that is favorable to a defendant, which is either exculpatory or impeaching and is material to either guilt or punishment, regardless whether the defendant requests the information. See id. at 106. The Supreme Court has

defined evidence as material evidence "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433 (1995)(quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Accord Been v. Lambert, 283 F.3d 1040, 1054 (9th Cir. 2002)(holding that the prosecutor erred in "fail[ing] to disclose multiple pieces of critical impeachment information that could have been used to undermine the credibility of . . . a prosecution witness whose testimony was crucial to the state's claims").

Both in Kyles v. Whitley and in Been v. Lambert, the members of the prosecutor's team failed to disclose essential exculpatory evidence, of which a reasonable person would have considered the charges differently. The prosecutor has a constitutional duty under Brady to disclose exculpatory evidence to a criminal defendant. See Abatti v. Superior Court, 112 Cal. App. 4th 39, 52 (2003). According to Jean v. Collins, 221 F.3d 656 (4th Cir. 2000)(en banc)(equally divided court)(Wilkinson, J., concurring), the United States Court of Appeals for the Fourth Circuit recognized that it has held that "[a] police officer who withholds exculpatory information from the prosecutor can be liable under . . . section 1983, but only where the officer's failure to disclose the exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial." Id. at 659 (quotations and citations omitted)(alteration in the original). The Fourth Circuit, however, recognized that "[t]hese cases have left unclear the exact nature of any duty that the law imposes on police with regard to exculpatory evidence." Id. The Fourth Circuit held that "to speak of the duty binding police officers as a *Brady* duty is simply incorrect. The Supreme Court has always defined the *Brady* duty as one that rests with the prosecution." Id. As the Fourth Circuit explained:

> The *Brady* duty is framed by the dictates of the adversary system and the

> prosecution's legal role therein. Legal terms of art define its bounds and limits. The prosecutor must ask such lawyer's questions as whether an item of evidence has "exculpatory" or "impeachment" value and whether such evidence is "material." It would be inappropriate to charge police with answering these same questions, for their job of gathering evidence is quite different from the prosecution's task of evaluating it. This is especially true because the prosecutor can view the evidence from the perspective of the case as a whole while police officers, who are often involved in only one portion of the case, may lack necessary context. To hold that the contours of the due process duty applicable to the police must be identical to those of the prosecutor's *Brady* duty would thus improperly mandate a one-size-fits-all regime.

Id. at 660. The Fourth Circuit also noted that "the law has already placed ultimate responsibility upon the prosecutor for disclosing *Brady* material to the defense," and that "the prosecutor bears the responsibility for implementing procedures designed to ensure that police officers turn over all evidence to him." Id. The Jean v. Collins court concluded that, to establish liability for failing to disclose exculpatory evidence, the plaintiff would at least have to demonstrate that the officer acted in bad faith. See id. ("[P]olice officer negligence or inadvertence in failing to turn over evidence cannot be actionable under § 1983.").

While Zamora does not cite or discuss other Tenth Circuit opinions, under 42 U.S.C. § 1983, a law enforcement officer may violate the Fourth Amendment if he or she knowingly or recklessly omits information from an arrest affidavit which, if included, would have vitiated probable cause. See Pierce v. Gilchrist, 359 F.3d 1279, 1293 (10th Cir. 2004)(discussing pleading requirements under rule 12(b )(6)); Taylor v. Meacham, 82 F.3d 1556, 1562-64 (10th Cir. 1996)("[I]t is a Fourth Amendment violation to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." (quotation omitted)); Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996)("It is a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the affidavit, or to knowingly or recklessly

omit from the affidavit information which, if included, would have vitiated probable cause." (quotations and citation omitted)); Stewart v. Donges, 915 F.2d 572, 582-83 (10th Cir. 1990). In such situations, the court "examin[es] the affidavit as if the omitted information had been included and inquir[es] if the affidavit would still have given rise to probable cause for the warrant." Stewart v. Donges, 915 F.2d at 582 n.13. See Wolford v. Lasater, 78 F.3d at 489; Taylor v. Meacham, 82 F.3d at 1562. As the United States Court of Appeals for the Seventh Circuit explained:

> A warrant does not erect an impenetrable barrier to impeachment of a warrant affidavit. Franks v. Delaware, 438 U.S. 154 . . . (1977). If an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner.

Olson v. Tyler, 771 F.2d 277, 281 (7th Cir. 1985)(footnote omitted).

## MALICIOUS PROSECUTION

In the Tenth Circuit, courts must "take[] the common law elements of malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious prosecution claim . . . [T]he ultimate question, [however], [is] whether the plaintiff has proven a constitutional violation." Taylor v. Meacham, 82 F.3d at 1561. See also Wolford v. Lasater, 78 F.3d at 489 ("It is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under § 1983."). The Tenth Circuit recently clarified that "federal courts fashioning constitutional analogues to traditional common law torts should refer to the general common law tradition, rather than to the law as defined by the jurisdiction where the action originated." Pierce v. Gilchrist, 359 F.3d 1279, 1289 (10th Cir. 2004). Accord Montoya v. City of Albuquerque, No. CIV 03-0261 JB/RHS, filed May 10, 2004 (Doc. 116).

Recently, the Honorable John E. Conway, Senior United States District Judge, discussed in detail the elements of a § 1983 claim based on malicious prosecution. See Chacon v. Watson, No. CIV 03-438 JC/ACT, Memorandum Opinion and Order at 9-12 (D.N.M.), filed May 7, 2004 (Doc. 21). Judge Conway noted three of the elements of traditional malicious prosecution claims: (i) that the defendant must have "initiated" the allegedly malicious action; (ii) that "the original action must have terminated in favor of the plaintiff;" and (iii) that "there must have been no probable cause to support the original arrest, continued confinement, or prosecution." Chacon v. Watson, Mem. Op. at 11. Without proof of both of these essential elements, a § 1983 malicious prosecution claim fails as a matter of federal law.

In the Tenth Circuit, it is not clear whether a malicious prosecution claim includes a specific intent element and, if so, what mens rea is required. See Pierce v. Gilchrist, 359 F.3d at 1297 & n.12. In analyzing the elements of a malicious prosecution, the Tenth Circuit addressed malice, but also included a footnote:

> Neither party has questioned the applicability of malice as an element of a § 1983 claim, and we therefore have no occasion to address the issue. See Franks [v. Delaware], 438 U.S. at 155-56 . . . (employing a standard of "knowingly and intentionally, or with reckless disregard for the truth," falsifying or omitting evidence, in the context of Fourth Amendment challenges); Arizona v. Youngblood, 488 U.S. 51, 55 . . . (1988)(requiring a showing of "bad faith" in the context of due process challenge to failure to preserve evidence); see also Stewart [v. Donges], 915 F.2d at 581-83; Wolford [v. Lasater], 78 F.3d at 489; cf. Jean v. Collins, 221 F.3d 656 (4th Cir.2000)(en banc)(equally divided court)(considering whether the failure of police to provide exculpatory evidence is actionable under § 1983 in the absence of specific intent).

Pierce v. Gilchrist, 359 F.3d at 1297 n.12. See also id. at 1293 ("There is some disagreement in these cases over what degree of intent the officer must have, but if it is true that [the state actor] maliciously withheld exculpatory evidence and fabricated inculpatory evidence, . . . her actions would

satisfy even the most demanding standards put forth by the courts.").

## ANALYSIS

At the outset, the Court notes that Zamora's only dispute with Valdez' entitlement to absolute immunity and qualified immunity as to false arrest and malicious prosecution derives from what Valdez characterizes as a newly raised theory. Zamora contends that his arrest on a facially valid bench warrant, which was based on a grand jury indictment, which was based on a grand jury's determination and vote of probable cause, were all "tainted" and "invalid" because Valdez failed to present exculpatory evidence to the grand jury. While Valdez contends that the Court should not reach this newly raised issue, the Court will decide this issue, and will enter summary judgment for Valdez and against Zamora on his federal claims.

## I. THE COURT WILL DISMISS ZAMORA'S "OFFICIAL CAPACITY" CLAIMS AGAINST VALDEZ.

The Court does not understand "representative capacity" in the context of a 42 U.S.C. § 1983 claim, but to the extent that it means official capacity, the law bars such claim. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that states, arms of state, and state officials acting in their official capacities are not "persons" within the meaning of § 1983 and are immune thereunder from damage suits); Kentucky v. Graham, 473 U.S. 159, 165-66, 169-70 (1985)(explaining that suits against state officials in their official capacities are suits against the state "in all respects other than name").

The Court will dismiss the "official capacity" claims as moot because the State of New Mexico has already been dismissed.

## II. THE COURT WILL ENTERTAIN ZAMORA'S RESPONSE.

Valdez contends that, in the case's procedural posture, the Court should not entertain Zamora's primary response to his motion for summary judgment. Valdez argues that Zamora's current position is a newly raised issue. Valdez contends that, first, Zamora failed to raise the issue in his complaint, and the Court's deadline for amending the pleadings passed months ago. See IPTR at 3, filed July 26, 2004 (Doc. 73). Valdez argues that, years before Zamora filed his complaint, he was aware of the factual bases for the issues omitted from his pleading and which he seeks to raise, for the first time, in his response in opposition to qualified immunity and summary judgment. Valdez contends that there is no excuse for Zamora's failure to plead the issue and that the record demonstrates that Zamora had actual knowledge of the issue in 2001.

Second, Valdez contends that Zamora challenged the indictment on the same legal grounds that he attempts to raise now, and lost on the merits. Valdez argues that the criminal proceedings wherein Zamora raised the issue of the State's alleged failure to present exculpatory evidence was the appropriate and proper forum for such issue, and the issue was litigated there and resolved against Zamora by the state court. Valdez maintains that collateral estoppel or res judicata bars relitigation of the issue. See New Mexico v. Arevalo, 132 N.M. 306, 308-09, 47 P.3d 866, 868 (Ct. App. 2002)(outlining the elements of collateral estoppel); Reeves v. Wimberly, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1988)(quoting Silva v. New Mexico, 106 N.M. 472, 476, 745 P.2d 380, 384 (1987)(holding that court may apply collateral estoppel "when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether defendant was privy to the prior suit")); Blea v. Sandavol, 107 N.M. 554, 558, 761 P.2d 432, 436 (Ct. App. 1988)(explaining that, in contrast to collateral estoppel, which bars relitigation of issues actually litigated, "res judicata bars relitigation of any issue which was, or might have been, litigated

in the first suit"). Valdez asserts that collateral estoppel or res judicata, and the passage of the Court's deadline for amending the pleadings, bars Zamora's attempt to raise a new, unpleaded claim in his brief.

Under the circumstances, the Court will consider Zamora's issue, even if it can fairly be characterized as newly raised. Where Zamora may have raised an unpleaded issue for the first time in his response, it may be appropriate for the Court to consider additional material facts in deciding the motion for summary judgment. The Court may also need to address whether the state court already decided the issue. The Court will, however, decide this issue on the record before it, and will enter summary judgment for Valdez and against Zamora on his federal claims.

## III. THE COURT WILL DISMISS ZAMORA'S MALICIOUS PROSECUTION CLAIM AGAINST VALDEZ.

There is no dispute that Valdez turned over all evidence -- including any exculpatory evidence -- to Harwell. Accordingly, Valdez is entitled to absolute immunity. Moreover, even if Valdez were not entitled to absolute immunity, he is entitled to qualified immunity.

### A. ABSOLUTE IMMUNITY AS TO "MALICIOUS PROSECUTION."

Regarding the second part of Zamora's § 1983 claim, that Zamora was "maliciously prosecuted without probable cause," Complaint ¶ 38(2), at 7, Valdez is entitled to absolute immunity as a matter of law. Moreover, even if absolute immunity did not apply to Valdez' testimony, he is nonetheless qualifiedly immune from § 1983 liability.

#### 1. That Valdez was not the Prosecuting Attorney Does Not, By Itself, Absolve Valdez from Liability.

Valdez urges the Court to find that Valdez is immune from § 1983 liability because it was the grand jury, and not Valdez, who initiated the prosecution by returning an indictment charging Zamora

with twenty-one felonies. See N.M. Const. art. II, § 14; Rule 5-201D NMRA (stating that criminal prosecution "commenced" by the filing of an indictment). As a matter of New Mexico law, the indictment constituted a finding by the grand jury of probable cause, see NMSA 1978, § 31-6-10, which finding, again as a matter of state law, generally is not subject to judicial review, see id. at § 31-6-11(A); New Mexico v. Elam, 86 N.M. 595, 598, 526 P.2d 189, 192 (Ct. App. 1974). In addition, Valdez maintains that the undisputed evidence shows that Valdez was not the prosecuting attorney assisting the grand jury. See Valdez Second Aff. ¶ 10, at 2. It was the state district court's bench warrant, which expressly was based upon the grand jury indictment, that was the basis for Zamora's "original arrest," and it was the indictment, and the state court's conditions of release, that were the bases for his "continued [post-arrest] confinement" and his "prosecution" as to the felonies that the grand jury charged. Accordingly, Valdez urges the Court to find that Valdez is immune from § 1983 liability on Zamora's malicious prosecution claim. The Court will so find, but on other grounds.

Under the law from the Tenth Circuit and other circuits, that the prosecutor decided to bring charges, or that the grand jury returned an indictment, does not automatically insulate Valdez from liability. See, e.g., Pierce v. Gilchrist, 359 F.3d at 1292. Thus, in determining whether Zamora has offered sufficient evidence to establish a genuine issue of material fact whether Valdez' actions support a claim of malicious prosecution, the Court must address the common-law elements of the tort of malicious prosecution and then determine whether Valdez' conduct rises to the level of a constitutional violation. Id. at 1285-90.

The Tenth Circuit has recently clarified that, whether a person "initiates" an action, is not limited to the person filing the charges. Id. at 1293. In Pierce v. Gilchrist, the Tenth Circuit held --

on a motion to dismiss -- that a forensic chemist could be an "initiator" by allegedly fabricating evidence and omitted exculpatory evidence. See id. In so holding, the Tenth Circuit explained: "Congress was concerned not just with the officer who formally initiates the process that leads to an unconstitutional seizure, but to all those who were the 'cause' of deprivations of constitutional rights." Id. at 1292. Thus, the undisputed fact that Valdez was not the prosecuting attorney does not, in and of itself, absolve Valdez from liability.

**2. Valdez is Entitled to Absolute Immunity Because He Turned Over All Exculpatory Evidence to the Prosecution.**

Unlike the forensic chemist in Pierce v. Gilchrist, however, Valdez and Harwell maintain that Valdez provided all relevant information discovered in the course of the investigation to Harwell before the grand jury proceedings. There is no evidence in the report to support an allegation that Valdez provided false information or did not report material evidence to the prosecutor. To the contrary, Valdez, in a sworn affidavit, maintains that he "reported to . . . Harwell all information and documents of potential relevance which I uncovered, obtained or learned about during the course of the investigation . . . ." Valdez Third Aff. ¶ 3, at 1. Harwell also testified in a sworn affidavit that "Valdez reported to me all pertinent information and documents which he uncovered during the course of his investigation . . . ." Harwell Second Aff. ¶5, at 2. There is nothing in the record to indicate that Valdez was in possession of exculpatory evidence which he did not provide to Harwell, or that Valdez falsified or misled Harwell in any manner. Cf. Jean v. Collins, 221 F.3d at 663 (holding that, for an officer to be held liable for failing to disclose exculpatory evidence, the officer must act in bad faith)(Wilkinson, J., concurring).

Nevertheless, Zamora wants the Court to find that Valdez violated his constitutional rights

because Valdez did not present the tape and other evidence to the grand jury. Zamora contends that there is evidence that Valdez, as an investigative officer, withheld crucial exculpatory evidence from the grand jury. Zamora alleges that -- had Valdez disclosed the critical exculpatory and impeaching evidence favorable to Zamora -- a reasonable person might not have found probable cause. Upon disclosure of the exculpatory evidence at trial, a jury acquitted Zamora.

Zamora is attempting to sue Valdez in his individual capacity for the prosecutor's failure to play the audiotape. Cf. New Mexico v. Hewitt, 108 N.M. at 183, 769 P.2d at 96 (stating that prosecutor "invested with wide discretion" as to what allegedly exculpatory evidence he or she must present to grand jury). As such, Zamora's claim is not on good grounds. Zamora's situation, where Harwell decided what to bring out, is similar to all of the witnesses and evidence before the grand jury.

The Court does not agree with what Valdez characterizes as Zamora's newly raised argument. Zamora's argument fundamentally misconstrues the roles and respective duties of, on the one hand, an investigating law enforcement officer who testifies before a grand jury, and, on the other hand, the prosecuting attorney. Unlike the situation in which the officer has not reported or disclosed exculpatory evidence to the prosecutor, or in which the officer provides false or fabricated evidence to the prosecutor, Zamora fulfilled his duty as the investigating officer by providing all relevant information to Harwell. Zamora does not cite any case involving an officer's failure to present exculpatory evidence to a grand jury that the officer had already disclosed to the prosecuting attorney.[2] In effect, without sound explanation for how he gets there, Zamora treats Valdez as the

---

[2] The Court could also not locate any cases -- Tenth Circuit or otherwise -- which addressed whether an officer, having reported all relevant information to the prosecuting attorney and not having made any false or misleading representations, can nevertheless still be held liable under § 1983

prosecutor. The parties do not dispute the evidence that Harwell was the court-appointed aide to the grand jury -- the appointed Special Prosecutor and the "prosecuting attorney assisting the Grand Jury" within the meaning of New Mexico law. Also, Zamora does not to explain why he, who testified before the grand jury at his own request, did not himself inform the grand jury members about his self-described "sexual horseplay" with Baldonado or about their allegedly steamy, mutually agreeable late-night telephone conversations.

The Tenth Circuit has stated that a police officer can be a "complaining witness" -- and therefore not entitled to absolute immunity -- and "initiate . . . a baseless prosecution by giving false testimony at a grand jury proceeding." Anthony v. Baker II, 955 F.2d at 1399. The situation in this case, however, is fundamentally different from an officer excluding exculpatory evidence from the prosecuting attorney; here, Valdez provided all evidence -- including the alleged exculpatory evidence -- to Harwell. Harwell's legal determination of what constituted exculpatory evidence is the province of the prosecuting attorney, not the investigating officer.[3] Because there is no evidence to support the allegation that Valdez testified falsely or misled the prosecutor, there is no genuine issue of material fact whether Valdez initiated or instigated the alleged wrongful prosecution of Zamora. Valdez is therefore entitled to absolute immunity for testimony at the grand jury proceeding. To hold otherwise would lead to the untenable situation in which an officer faithfully and dutifully discloses

---

for his failure to mention exculpatory evidence in his grand jury testimony. Instead, the cases located by the Court discuss the effect of an officer or other state office allegedly withholding exculpatory evidence from, or provided false evidence to, the prosecuting attorney. See, e.g., Anthony v. Baker II, 955 F.2d at 1399 & n.3; Robison v. Maruffi, 895 F.2d at 655-56; White v. Frank, 855 F.2d at 962.

[3] The state court's finding as to one of the specific items of evidence about which Zamora complains -- the tape -- underscores the distinction between prosecutor and officer witness. It was the prosecutor's decision, not Valdez', not to play the tape to the grand jury. See New Mexico v. Zamora, Memorandum Opinion and Order Denying Defendant's Motion to Dismiss at 4.

all material evidence -- exculpatory and otherwise -- to the prosecutor, but can nevertheless be held liable for damages arising out the prosecutors' legal decision to not present certain evidence at the grand jury proceedings. That is a result no court has yet endorsed.

**3. Zamora Has Not Offered Sufficient Evidence to Establish a Genuine Issue That There was No Probable Cause.**

To survive summary judgment, Zamora must also offer sufficient evidence to establish a genuine issue that there was no probable cause. According to Zamora: "Had Valdez disclosed the critical exculpatory and impeaching evidence favorable to Zamora as required by clearly defined duty, a reasonable person would not have found probable cause." Response ¶ 6, at 7. Again, Valdez fulfilled his duty to disclose exculpatory evidence by providing all relevant information to Harwell. The prosecutor made the legal decision to not introduce some of that evidence to the grand jury, a decision which the state court affirmed in denying Zamora's motion to dismiss. Although the state court did not need to go so far as to hold that the grand jury's indictment was supported by probable cause to decide the motion before it, by denying Zamora's motion to dismiss the indictment based on Harwell's failure to present some evidence to the grand jury -- some of which is that same evidence at issue before this Court -- the state court decided that the excluded evidence did not undermine the grand jury's indictment. Thus, this Court will not undermine the state court's ruling and hold that the grand jury's indictment was not based on probable cause. Again, this situation is inapposite to that in which the testifying officer has withheld information from the prosecutor and, thus, from the grand jury, and a grand jury issued an indictment based on the flawed evidence. That is not the case before this Court. Here, no taint of illegal wrongdoing or deception attaches to the grand jury's indictment because there is no showing that the grand jury issued the indictment on false or fabricated

evidence, and the state court affirmed the prosecutor's decision to exclude certain evidence. Thus, Valdez is entitled to absolute immunity on Zamora's malicious prosecution claim.

### B. VALDEZ IS ENTITLED TO QUALIFIED IMMUNITY FROM ZAMORA'S "MALICIOUS PROSECUTION" CLAIM.

Moreover, even if Valdez was not entitled to absolute immunity for his testimony, the Court holds that Valdez is nevertheless insulated from § 1983 liability based on qualified immunity. Having raised the defense of qualified immunity, Zamora must come forward with evidence establishing that a constitutional violation occurred, and, if so, that the law is clearly established. Valdez supplied all relevant evidence -- exculpatory and otherwise -- to Harwell. In the Fourth Amendment context, a constitutional violation may arise when exculpatory evidence is omitted, and such an omission negates the finding of probable cause. Similarly, in certain instances, officers can violate a defendant's right to due process by withholding exculpatory evidence. Again, Valdez disclosed all evidence to Harwell, and, because he did not withhold exculpatory evidence from the prosecutor, he cannot be held liable for a Fourth Amendment or Fourteenth Amendment violation for failing to disclose exculpatory evidence. Zamora has therefore failed to offer evidence creating a genuine issue of material fact that Valdez violated Zamora's constitutional rights.

Moreover, even assuming Valdez' actions constituted a constitutional violation, Valdez is nevertheless entitled to qualified immunity because a reasonable investigating officer would not have known that -- after disclosing all relevant evidence to the prosecuting attorney -- he had an independent duty to present such evidence to the grand jury. Zamora provides no case -- Tenth Circuit or otherwise -- to support his legal theory. Having no case law to the contrary, and concluding that, based on the law at the time the action occurred, a reasonable officer would have

not known such conduct violated the law, Valdez is entitled to qualified immunity on Zamora's malicious prosecution claim.

The Fourth Circuit Judges' opinions in Jean v. Collins strengthens this conclusion. In that case, which produced an en banc decision with an equally divided court, the concurring opinion stated that, to be liable for failing to disclose exculpatory evidence, written by the Honorable Judge J. Harvie Wilkinson III, then-Chief Judge, the officers must act in bad faith. See Jean v. Collins, 221 F.3d at 656. The concurrence described "the *Brady* duty as one that rests with the prosecution" and concluded that negligent miscommunication is insufficient to establish officer liability under § 1983. Id. at 656, 660-61, 663. One of the dissenting opinions, written by the Honorable Francis D. Murnaghan,[4] however, concluded that "*Brady*'s compulsory disclosure requirement applies to all officials working in furtherance of the State's prosecution," and, therefore, an officer may be held liable under § 1983 for breaching that duty by failing to disclose exculpatory evidence to the prosecutor. Id. at 664, 675. The Fourth Circuit was therefore divided on whether an officer could be held liable for not disclosing exculpatory evidence based on negligent miscommunication with the prosecutor. In this case, disclosure is not at issue; there is no evidence that Valdez withheld any exculpatory evidence from Harwell. Thus, insofar as Jean v. Collins demonstrates the unsettled law regarding the scope of officers' § 1983 liability for not disclosing exculpatory evidence, Valdez' duty, having already disclosed all evidence, to specifically present that evidence to the grand jury, is even less established.

Thus, as a matter of law based on the undisputed material facts, Valdez is immune from

[4] The Honorable J. Michael Luttig wrote a separate opinion in dissent. See Jean v. Collins, 221 F.3d at 678-79.

liability on Zamora's § 1983 claim maliciously prosecution claim.

## IV. THE COURT WILL DISMISS ZAMORA'S FALSE ARREST CLAIM AGAINST VALDEZ.

The state district court issued a facially valid warrant that ordered Valdez to arrest Zamora. Accordingly, Valdez is entitled to absolute immunity from Zamora's false arrest claim. And even if Valdez were not entitled to absolute immunity, he is entitled to qualified immunity.

### A. VALDEZ ENJOYS ABSOLUTE IMMUNITY FROM ZAMORA'S "FALSE ARREST" CLAIM.

As a matter of law, the undisputed facts establish that Zamora's "false arrest" claim under 42 U.S.C. § 1983 fails based on the doctrine of absolute immunity. See Complaint ¶ 38(1), at 7. Based expressly on the indictment, the state district court issued a bench warrant expressly commanding Zamora's arrest. The bench warrant in this case constitutes a court order.

The evidence is undisputed that, based on a grand jury indictment, the state district court issued a bench warrant commanding "any officer" to arrest Zamora and bring him before the court "forthwith" to answer the charges in the indictment. Valdez and Altwies executed the bench warrant and arrested Zamora on the authority of the state court's order. It also is undisputed that Valdez and another officer, acting pursuant to the state court's express order in a facially valid bench warrant, executed the bench warrant and arrested Zamora and took him to the County Jail for booking. See Bench Warrant at 1; Altwies Aff. ¶ 9, at 2; Second Aff. Valdez ¶ 16, at 3. Under the circumstances, therefore, absolute "quasi-judicial" immunity bars Zamora's § 1983 claim for false arrest. See Whitesel v. Sengenberger, 222 F.3d at 867-70; Turney v. O'Toole, 898 F.2d at 1473; Valdez v. City and County of Denver, 878 F.2d at 1287-89.

Zamora contends that the district court did not issue a facially valid warrant because Valdez

tainted it by his suppression of evidence favorable to the accused. The question is whether Valdez can take refuge behind a "facially valid" warrant that he allegedly acted improperly to obtain. The warrant that Valdez seeks to use as a shield was allegedly obtained as a result of Valdez' breaches of his investigatory and prosecutory duties to disclose evidence favorable to Zamora, which was exculpatory and impeaching, and was material to Zamora's guilt or punishment.

Having determined, however, that there is no evidence to support the contention that Valdez unlawfully suppressed any evidence because Valdez disclosed all evidence -- exculpatory or otherwise -- to Harwell, this situation is distinguishable from those in which an officer, having "defrauded" or mislead in a material way the prosecuting attorney seeking an indictment or the judge issuing a warrant, seeks to hide behind the warrant to insulate him from liability. See Robinson v. Maruffi, 895 F.2d at 655-56; Jones v. City of Chicago, 856 F.2d at 994; Hand v. Gary, 838 F.2d at 1427-28. Here, Valdez did not mislead or defraud the prosecutor, and, thus, having not committed any wrongdoing, cannot be held liable for executing the arrest warrant.

Valdez is thus entitled to absolute immunity on the claim for false arrest under 42 U.S.C. § 1983 (Count IV) as a matter of law.

### B. VALDEZ ENJOYS QUALIFIED IMMUNITY FROM ZAMORA'S "FALSE ARREST" CLAIM.

Regarding Zamora's "false arrest" claim, even if absolute immunity does not bar the claim, qualified immunity bars it. Valdez contends that, in any event, probable cause would have existed to support the grand jury's charges even if the omitted information had been presented to the grand jury. See Grand Jury Proceedings, August 16, 2000, 8:1 - 26:23 (Baldonado). Valdez contends that Zamora has not met his burden to prove otherwise, and thereby has failed to overcome the

presumption of qualified immunity.

The Court need not reach the question of whether the omitted evidence is exculpatory. Instead, the question is whether a reasonable officer could have believed that probable cause to arrest existed at the moment the arrest was made after conducting an investigation, turning over all relevant information to the prosecutor, testifying at the grand jury by responding to the prosecutor's questions, and then relying on a bench warrant issued based on the grand jury indictment. The Court concludes that, based on the circumstances, an objectively reasonable officer would rely on warrant and effectuate the arrest.

Moreover, even if such conduct amounts to a constitutional violation, there is no clearly established law to the effect that an arrest based on execution of a court's bench warrant may constitute false arrest. Indeed, the clearly established law in the Tenth Circuit suggests a contrary result. The most relevant cases establish, if anything, an officer's absolute "quasi-judicial" immunity. Valdez is entitled to qualified immunity on the grounds that he arrested Zamora based upon a facially-valid bench warrant commanding Zamora's arrest. Because Zamora has not established a constitutional violation or, even assuming a constitutional violation, that the law is clearly established, Valdez is entitled to qualified immunity on the false arrest claim.

## V. THE COURT WILL REMAND THE THREE PENDENT STATE-LAW TORTS (COUNTS I, II, AND III) TO THE STATE COURT.

Having dismissed the claim on which the Court had original federal jurisdiction, the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law claims. See Pruitt v. Comcast Cable Holdings, LLC, 100 Fed. Appx. 713, 717 (10th Cir. June 3, 2004)(unpublished decision)(holding that the district court's refusal to exercise supplemental

jurisdiction over plaintiff's state law contract claims after dismissing all federal claims was "clearly authorized under 28 U.S.C. § 1367(c)(3)"). Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, [a] district court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court, however, "may decline to exercise supplemental jurisdiction . . . if[:]"

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The third provision applies to this case. The Court has dismissed the claim on which it had original jurisdiction -- the § 1983 claim for malicious prosecution and false arrest. The remaining claims sound in state law.

The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it. In United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), decided more than twenty years before Congress passed 28 U.S.C. § 1367, the Supreme Court addressed the federal district courts' ability to exercise jurisdiction over state law claims. In explaining that such power existed, the Supreme Court noted that it "need not be exercised in every case in which it is found to exist." Id. at 726. The Supreme Court continued:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of

> applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Id. (footnotes omitted). See Bd. of County Comm'rs v. Geringer, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002)("[T]he district court's ruling [in which it declined to review the state law claims] comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial . . . .").

Valdez urges the Court to decide the state law tort claims -- Count I, malicious abuse of process; Count II, defamation; and Count III, false arrest. In a supplemental letter, Valdez concedes that "[t]he defamation count arguably involves different facts and a distinct body of state law." Letter from Michael Dickman, Counsel for Michael Valdez, to the Honorable James O. Browning, filed November 7, 2005. Nevertheless, Valdez maintains that the malicious abuse of process and false arrest claims "involve the same principals of law as the claims under 42 U.S.C. § 1983 based on malicious prosecution and false arrest." Id. Although there are some common elements between the state law torts of malicious abuse of process and false arrest and federal law, the Tenth Circuit has recognized that it is to look to common law -- as opposed to the law of the forum state in which the action occurred -- to determine whether there is a constitutional violating giving rise to liability under § 1983. Pierce v. Gilchrist, 359 F.3d at 1286-88. Although there are similar elements between the federal law and New Mexico law, there are also important differences. Because the Court, by resolving the federal claim, need not address all state law elements, the Court declines to exercise supplemental jurisdiction over these remaining state law claims. The state court is the more appropriate forum to resolve whether Valdez' actions constituted torts under New Mexico law.

**IT IS ORDERED** that the Defendant's motion for summary judgment on the remaining federal claims is granted and the federal claims are dismissed with prejudice. The remaining claims are remanded to the Thirteenth Judicial District Court, County of Valencia, State of New Mexico.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Tibo J. Chavez
Belen, New Mexico

*Attorney for the Plaintiff*

Michael Dickman
Santa Fe, New Mexico

*Attorney for Defendant Michael Valdez*