# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GILBERT ZAMORA,

    Plaintiff,

vs.  No. CIV 03-743 JB/RLP

CITY OF BELEN, TANYA FRAZER,
individually and in her representative capacity,
STATE OF NEW MEXICO, and MICHAEL VALDEZ,
individually and in his representative capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Application for Award of Attorney's Fees, filed May 27, 2005 (Doc. 100). The Court held a hearing on this motion on November 22, 2005. The primary issue is whether the Court should award Defendant Michael Valdez attorney's fees under 42 U.S.C. § 1988 for prevailing against Plaintiff Gilbert Zamora in this civil rights action. Because the Court concludes that Zamora's § 1983 claims against Valdez in his official capacity were frivolous, the Court will award $493.75 in fees for work that Valdez performed on those claims. The Court will not award fees for the other claims, because the Court determines that Zamora's claims did not rise to the level of frivolousness that the case law requires.

## PROCEDURAL BACKGROUND[1]

Zamora served as a detective sergeant with the Belen Police Department from 1992 to 1999,

---

[1] The Court is familiar with the case's procedural posture and the material facts. The Court's Memorandum Opinion and Order, filed April 27, 2005 (Doc. 97), granting the Defendant Special Agent Michael Valdez' motion for summary judgment, and the Court's previous memorandum opinions and orders related to Zamora's untimely service of process, see Doc. 76, and the stay of discovery, see Doc. 96, set forth more fully the case's procedural aspects and the relevant facts.

and his duties "included investigation and prosecution of crimes." Affidavit of Gilbert Zamora ¶¶ 1-2, at 1 (executed December 2, 2004). Based on a grand jury's indictment alleging twenty-one felonies, including Criminal Sexual Penetration, Kidnapping, and False Imprisonment, the New Mexico State Thirteenth District Court issued a bench warrant commanding Zamora's arrest. See Memorandum Opinion and Order at 2, 4-5. Valdez and Special Agent Jolene Altwies executed the bench warrant and arrested Zamora on the authority of the state court's order. See id. at 6.

In 2001, during the course of the underlying criminal proceedings in state court, Zamora filed a motion to dismiss the indictment. See Memorandum Opinion and Order at 7. Zamora's 2001 motion was based on the State's alleged failure to present exculpatory evidence to the grand jury, including tape-recorded conversations between Zamora and the alleged victim of his crimes; the State's refusal to allow Zamora's allegedly "exculpatory" witness to testify; and Valdez' allegedly prejudicial grand jury testimony. Id. The state district court, however, after an evidentiary hearing, briefs, and oral argument, denied Zamora's motion on the merits. See id. Specifically, the state court concluded that the tape, which contained multiple conversations between Zamora and the alleged victim, did not constitute exculpatory evidence within the definition of the New Mexico statutes, and further concluded that "[f]ailure of the Assistant Attorney General to present such [taped] statements to the Grand Jury did not result in a breach of the [prosecutor's] duty to assist the Grand Jury fairly and impartially." Id. at 8. Subsequently, on or about June 12, 2001, after trial, a petit jury acquitted Zamora of all charges. See id.

Zamora thereafter filed a Complaint in the Thirteenth Judicial District against the City of Belen, Tanya Baldanado (Frazer), the State of New Mexico, and Valdez in his individual and "representative" capacity. Zamora alleged Malicious Abuse of Process in arresting and prosecuting

him "without any legal foundation" or probable cause. Complaint ¶¶ 12, 15, at 3-4. Zamora also asserted claims for defamation, false arrest, and violations of 42 U.S.C. § 1983. See id. ¶¶ 19-40, at 4-8. The Honorable William P. Johnson, United States District Judge, subsequently dismissed the § 1983 claim against the State of New Mexico because the State is not a "person" under Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). See Memorandum Opinion and Order at 2-3, filed August 6, 2003 (Doc. 12). Later, the parties jointly moved to dismiss Defendants City of Belen and Tanya Frazer, leaving Valdez as the only Defendant in this case. See Order Dismissing Claims With Prejudice at 1, filed February 27, 2004 (Doc. 61).

In his Complaint, Zamora implied that Valdez made a warrantless arrest. See Complaint ¶ 32, at 6. Moreover, Zamora expressly alleged that Valdez arrested him without probable cause and without having seen "any misdemeanors committed in [Valdez'] presence." Complaint ¶¶ 31-32, at 5-6. Zamora's Complaint does not talk about Valdez' role as a witness before the state grand jury, Valdez' grand jury testimony, or Valdez' or anybody else's alleged failure to present exculpatory evidence to the grand jury. See generally Complaint.

Zamora did not serve Valdez until eight months after he had filed his lawsuit and until after the rest of the case against the other Defendants had been litigated and resolved. See Memorandum Opinion and Order at 2, filed August 9, 2004 (Doc. 76). Although the Court denied Valdez' request to dismiss the case based on untimely service, the Court found that Valdez had resided and worked in Albuquerque and had not attempted to evade service of process or hide himself, and that Zamora had failed to show good cause for his delay in service. See id. at 2, 5 (Doc. 76).

On October 19, 2004, Valdez filed a motion for summary judgment based on absolute and qualified immunity. See generally Motion for Summary Judgment Based on Absolute and Qualified

Immunity, filed October 19, 2004 (Doc. 79).  In response to Valdez' motion for summary judgment based on absolute immunity and qualified immunity, Zamora raised a new issue that he had not pleaded in his Complaint – Valdez' alleged failure to present exculpatory evidence to the grand jury. Compare Complaint, with Zamora's Response and Memorandum in Opposition to Defendant Valdez' Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity, filed December 3, 2004 (Doc. 85);  Reply Brief in Support of Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity at 2, filed January 3, 2005 (Doc. 89).  Zamora did not mention in his response, whenever he raised the issue that Valdez allegedly failed to present exculpatory evidence to the grand jury, that a state court had denied Zamora's motion to dismiss the indictment because the evidence was not exculpatory under New Mexico law.  See generally Zamora's Response and Memorandum in Opposition to Defendant Valdez' Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity.

The Court determined that Zamora had not raised a genuine issue as to any of Valdez' proffered material facts.  See generally Memorandum Opinion and Order at 26-36 (Doc. 97).  The Court dismissed as moot the claims against Valdez in his official capacity because the State of New Mexico had already been dismissed from the case.  See id. at 24.  Recognizing that Zamora's arguments about Valdez' alleged failure to present exculpatory evidence to the grand jury could be characterized as newly raised, the Court nevertheless considered Zamora's contentions.  See id. at 26.  The Court concluded that Valdez was entitled to absolute and qualified immunity against the malicious prosecution claim, because Valdez had turned over all material evidence to the prosecutor, and no reasonable police officer would have believed that the law compelled him to turn over all exculpatory evidence to the grand jury as opposed to the prosecutor.  See id. at 26-34.  The Court

further ruled that Valdez was entitled to absolute immunity on the false arrest claim because the warrant was facially valid and Valdez had given the prosecutor all the evidence he had before the court issued the warrant; in the alternative, the Court held that qualified immunity also protected Valdez because a reasonable police officer would have relied on the warrant to arrest Zamora. See id. at 34-36. Having dismissed the federal claims, the Court remanded the state claims back to state court. See id. at 36-38.

Valdez moves the Court, pursuant to 42 U.S.C. § 1988, rule 54(d)(2) of the Federal Rules of Civil Procedure, and Local Rule D.N.M. LR-Civ. 54.5, to order Zamora to pay defense attorney's fees to Valdez in the amount of $21,050.00, payable to Risk Management Division, because Zamora's claims were allegedly frivolous, unreasonable, and without basis in law or fact. See Application at 1. This sum reflects 157.7 hours of billable time at the rate of $125.00 per hour plus gross receipts taxes. See generally Attorney Time Records. The motion does not seek fees based on Zamora's claims against Defendant State of New Mexico. See generally Application at 1. In response, Zamora pointed to the affidavits supporting the factual basis of his allegations and the law bolstering the substance of his claims. See Zamora's Response and Memorandum in Opposition to Defendant Valdez' Application for Attorney Fees at 1-4, filed July 18, 2005 (Doc. 105).

Zamora has been on notice that Valdez intended to seek reimbursement of his attorney's fees. From the outset, Valdez has pleaded a claim for attorney's fees based on the same grounds set forth in this motion, i.e., that Zamora's § 1983 claims were frivolous, unreasonable, or without foundation. See Answer at 5, filed July 26, 2004 (Doc. 74). In addition, in Valdez' Motion to Dismiss Based on Untimely Service of Process, filed February 18, 2004 (Doc. 59), Valdez argued that Zamora's Complaint was without foundation on the merits and was subject to dismissal or to summary

-5-

judgment on the merits. See id. at 3. Moreover, Valdez' reply as to that motion set forth a detailed summary of the same arguments on the merits which Valdez subsequently embodied in the Motion for Summary Judgment Based on Absolute Immunity and Qualified Immunity. See Reply in Support of Motion to Dismiss Based on Untimely Service of Process at 4-8, filed April 14, 2004 (Doc. 63). The Court ultimately granted the latter motion as to all of Zamora's § 1983 claims based on the identical arguments and authority contained in the reply, which Valdez had filed a year earlier. See Memorandum Opinion and Order (Doc. 97).

In addition, in a letter from Valdez' counsel to Zamora's counsel dated April 23, 2004, Valdez reiterated his position regarding the meritlessness of Zamora's § 1983 claim against him and gave notice, again, of Valdez' intent to seek reimbursement of defense attorney's fees pursuant to Hensley v. Eckerhart, 461 U.S. 424 (1983). See Affidavit of Michael Dickman ¶ 9, at 3 (executed May 16, 2005). Thus, the record reflects that Zamora has been on notice from the outset of litigation that Valdez believed Zamora's § 1983 claims were frivolous, unreasonable and/or without foundation, and that Valdez intended to seek attorney's fees. Since at least a year before the Court's grant of summary judgment, moreover, Zamora has known the precise legal and evidentiary basis for Valdez' averments. See Reply at 4-8.

**LAW REGARDING ATTORNEY'S FEE AWARDS AGAINST THE PLAINTIFF**

The Court may, in its discretion, award a "prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). See Houston v. Norton, 215 F.3d 1172, 1174 (10th Cir. 2000). "While a prevailing plaintiff ordinarily is entitled to attorney fees, a prevailing defendant in a civil rights action may recover attorney fees only if the suit was vexatious, frivolous, or brought to harass or embarrass the defendant." Mitchell v. City of Moore, 218 F.3d

-6-

1190, 1203 (10th Cir. 2000)(citations and internal quotations omitted). "[R]arely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff." Id. (citing Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1581 (10th Cir. 1995)). The fact that a district court dismissed a plaintiff's case on summary judgment does not automatically entitle a prevailing defendant to attorney's fees. See id. (citing Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995)). If the losing plaintiff's case was vexatious, frivolous, or brought to harass or embarrass the defendant, the court can award fees even if the plaintiff did not bring his case in bad faith. See Clajon Prod. Corp. v. Petera, 70 F.3d at 1581 (quoting Hughes v. Rowe, 449 U.S. 5, 14 (1980)). The Supreme Court of the United States has warned district courts against engaging

> in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (discussing awards to prevailing defendants in Title VII cases). See Jane L. v. Bangerter, 61 F.3d at 1513 (recognizing that the Supreme Court adopted Christiansburg Garment Co. v. EEOC's reasoning for attorney's fees under § 1988 in Hensley v. Eckerhart, 461 U.S. 424, 429 n.2 (1983)). Subjective bad faith is not part of the attorney's fees analysis. See Christiansburg Garment Co. v. EEOC, 434 U.S. at 421 ("In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.").

"In any fee request under § 1988(b), a claimant must prove two elements: (1) that the claimant was the prevailing party in the proceeding; and (2) that the claimant's fee request is reasonable." Robinson v. City of Edmond, 160 F.3d 1275, 1280 (10th Cir. 1998)(citations and internal quotations omitted). The court determines reasonableness by looking at the lodestar amount, which is "the product of the number of attorney hours reasonably expended and a reasonable hourly rate." Id. at 1281. In setting the hourly rate, a court should establish a rate based on the norm for lawyers of comparable skill and experience in private practice in the area in which the court sits, calculated as of the time the court awards the fee. See Ramos v. Lamm, 713 F.2d 546, 555 (10th Cir 1983). The hourly rate awarded should also provide sufficient incentive to allow lawyers to "litigate such cases for a living rather than as occasional charity work." Stokes v. City of Montgomery, 706 F. Supp. 811, 817 (M.D. Ala. 1988)(Thompson, J.). Additionally, the court should award fees on current rates rather than on historic rates. See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 726 (10th Cir. 1993)(citations omitted).

## ANALYSIS

Valdez prevailed against Zamora when the Court granted Valdez summary judgment as to all federal claims in this suit. See Memorandum Opinion and Order at 39. Valdez contends that it is entitled to a reasonable attorney's fee under the fee-shifting provisions of § 1988(b) because Zamora's claims were frivolous, unreasonable, and without basis in law or fact. Zamora argues that the law and the facts gave some support to his claims so that it was not frivolous or unreasonable for him to proceed in federal court. The Court concludes that both parties are partly right – and therefore partly wrong. The Court will award attorney's fees to Valdez for work performed on Zamora's § 1983 claim against Valdez in his official capacity, because Will v. Mich. Dep't of State

Police expressly ruled out such a claim. The Court will not award attorney's fees for the other claims, because the uncertain nature of the law regarding those claims did not render Zamora's claims so frivolous or unreasonable as to merit fee-shifting.

## I. THE COURT WILL AWARD ATTORNEY'S FEES FOR WORK PERFORMED ON THE § 1983 CLAIM AGAINST VALDEZ IN HIS OFFICIAL CAPACITY.

Zamora's Complaint stated, in part, a cause of action against Valdez in his individual and "representative" capacity under § 1983. Complaint (Caption), at 1, and ¶¶ 34-40, at 6-8. As the Court explained in its Memorandum Opinion and Order granting summary judgment, the Court understood Zamora to mean that he was suing Valdez in his individual and official capacity. See Memorandum Opinion and Order at 24. Pointing to Will v. Mich. Dep't of State Police, the Court dismissed Zamora's § 1983 claims against Valdez in his official capacity. See id.

These particular claims were frivolous because the Supreme Court has made clear that § 1983 does not envision suits against state officials acting in their official capacity. See Will v. Mich. Dep't of State Police, 491 U.S. at 71. For almost two decades, the Supreme Court has held that states are not "persons" under § 1983 based on the words of the statute and the purposes it sought to advance. See id. at 64-70. As a corollary to this principle, the Supreme Court also explained that plaintiffs cannot sue state officials in their official capacity, under § 1983, because such an action "is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Id. at 71 (citations omitted). Otherwise, plaintiffs could circumvent the bar against suing states by "a mere pleading device." Id. The United States Court of Appeals for the Tenth Circuit repeatedly reaffirmed that principle in the years before Zamora filed his Complaint. See e.g., Ruiz v. McDonnell, 299 F.3d 1173, 1181-82 (10th Cir. 2002); Stidham v. Peace Officer Stds.

& Training, 265 F.3d 1144, 1156 (10th Cir. 2001); Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1237 (10th Cir. 1999).

Given the clarity of the law, Zamora's claim was frivolous. The law since the 1980s put Zamora on notice that his claims against Valdez in his official capacity could not succeed because Valdez in his official capacity was not a person for § 1983 purposes. To pursue such a claim anyway flew in the face of a decade and a half of precedent. The Court will therefore award reasonable attorney's fees to Valdez on those claims.

Valdez must show that his requested fee is reasonable. Valdez asks the Court to grant him $21,050.00, based on a $125 hourly rate and 157.7 billable hours. As the Court explains below, it will grant Valdez fees only for work performed on the § 1983 claim against Valdez in his official capacity. The Court has looked through billed hours that Valdez' counsel submitted, and has noted each entry that indisputably represents work only on Valdez' motion for summary judgment. The Court has taken 9.1% from each entry, because Valdez devoted approximately 9.1% of his summary judgment brief – or one page out of eleven – to argue that Zamora had no § 1983 claim against him in his official capacity. The Court did not include the entries for July 20, 26, 29, and 30, 2004, dealing with the drafting of Valdez' affidavit because the affidavit dealt with the factual issues of the summary judgment motion, not the legal issues. The Court has added up each entry on the right column displayed below and arrived at the following number of hours: 3.95 hours. The number of hours expended is reasonable.

The table below reflects the entries the Court relied on to arrive at the total number of hours, along with 9.1% of each entry:

| **Entry on Billing Record** | **Number of Hours** | **9.1% of each hour** |
|---|---|---|
| 07/27/04 - Draft State's motion for summary judgment | 6.80 | 0.62 |
| 08/03/04 - Draft and finalize e-letter to Ira Bolnick re status of State's proposed summary judgment motion | .10 | .01 |
| 09/03/04 - Legal research for use in State's summary judgment motion | 3.20 | 0.29 |
| 09/24/04 - Telephone conference re ramifications and potential impact on summary judgment of Zamora's expert witness report | 0.50 | 0.05 |
| 09/27/04 - Legal research re defense to potential issue raised by Zamora's expert report, for use in summary judgment motion | 2.8 | 0.25 |
| 09/29/04 - Revise and rewrite State's summary judgment motion | 4.2 | 0.38 |
| 10/05/04 - Legal research re potential new issues raised by Zamora's expert witness report, vis-a-vis summary judgment motion | 1.5 | 0.14 |
| 10/18/04 - Revise, edit and finalize Valdez' motion for summary judgment | 1.8 | 0.16 |
| 10/19/04 - Draft and finalize letter to Zamora's counsel re SJ motion | 0.20 | 0.02 |

| | | |
|---|---|---|
| 12/09/04 - Review Zamora's response in opposition to State's motion for summary judgment | 0.30 | 0.03 |
| 12/14/04 - Legal research re cases contra to Zamora's new issue raised in opposition to SJ | 2.80 | 0.25 |
| 12/14/04 - Telephone conference with investigator re additional investigation to obtain documents for State's SJ reply | 0.10 | 0.01 |
| 12/16/04-12/17/04 - Draft State's reply brief in support of SJ | 7.20 | 0.66 |
| 12/16/04 - Telephone conference with former prosecutor re facts raised in Zamora's SJ response | 0.40 | 0.04 |
| 12/17/04 - Draft proposed affidavit in support of SJ | 0.40 | 0.04 |
| 12/20/04 - Review documents obtained for possible use in State's SJ reply | 0.30 | 0.03 |
| 12/21/04 - Telephonic conference re procedural issues relation to State's supplementation of SJ record | 0.20 | 0.02 |
| 12/22/04 - Telephone conference re affidavit in support of SJ | 0.20 | 0.02 |
| 12/23/04 - Telephone conference with Valdez clarifying facts vis-a-vis SJ reply | 0.30 | 0.03 |

| | | |
|---|---|---|
| 12/29/04 - Revise, edit and finalize State's reply brief in support of summary judgment | 5.50 | 0.50 |
| 01/03/05 - Revise, edit and finalize State's reply brief in support of summary judgment motion | 1.8 | 0.16 |
| 01/10/05 - Review letter re investigation vis-a-vis summary judgment motion | 0.10 | 0.01 |
| 02/10/05 - Review Judge Browning's newly-issued memorandum opinion for possible supplementation of State's SJ motion | 0.20 | 0.02 |
| 03/07/05 - Telephone conference with Zamora's attorney to vacate hearing on State's summary judgment motion | 0.10 | 0.01 |
| 03/22/05 - Review Judge Browning's Order vacating and resetting hearing on State's SJ motion | 0.10 | 0.01 |
| 04/06/05 - Legal research and finalize letter to Court requesting reconsideration of tentative ruling | 1.60 | 0.15 |
| 04/08/05 - Review Zamora's post-hearing supplemental exhibits in opposition to SJ | 0.20 | 0.02 |
| 04/27/05 - Review Court's 40-page Memorandum Opinion and Order on summary judgment | 0.20 | 0.02 |
| **TOTAL** | 43.1 | 3.95 |

The Court also concludes that the hourly rate charged by Valdez' attorneys – $125.00 – is reasonable. Recently, the Court determined that $250.00 was a reasonable hourly rate for a civil rights plaintiff's lawyer, which is double the amount requested by Valdez' counsel. See Kelley v. City of Albuquerque, Case No. CIV 03-507 JB/ACT, Memorandum Opinion and Order at 26 (D.N.M. October 24, 2005). Furthermore, Valdez points to an opinion by the Honorable John E. Conway, Senior United States District Judge, where the Court granted fees at hourly rates of $265, $225, and $175, all in excess of the amount requested in this case. See Baldonado v. New Mexico State Highway and Transportation Dep't, Case No. CIV 99-366 JC/LCS, Order at 2 (D.N.M. December 20, 2001). In light of these prior findings, Valdez' counsel's hourly rate is reasonable. Performing the lodestar calculation of 3.95 hours multiplied by $125 per hour yields $493.75. The Court will award Valdez $493.75 in attorney's fees.

## II.   THE COURT WILL NOT AWARD ATTORNEY'S FEES FOR THE REMAINING CLAIMS.

Valdez maintains that the remainder of Zamora's claims were frivolous for two reasons. First, Valdez argues that Zamora originally brought his claims in bad faith because he asserted that he was arrested based on a criminal complaint and without a warrant even though Zamora knew he had been arrested following an indictment and pursuant to a bench warrant. See Application at 5-7. Second, Valdez asserts that "well-settled law spanning decades" blocked Zamora's claims from going forward in the first place. Id. at 9.

It is true that Zamora, who served as a detective sergeant for seven years, presumably understands the difference between a criminal complaint and indictment, and between a warrantless arrest and an arrest based on a written bench warrant. It is also true that Zamora previously had

raised the newly raised issue in state court but lost. See Memorandum Opinion and Order at 7-8. If Zamora had pleaded the correct material facts of his arrest – the grand jury indictment, the state court's bench warrant, the state court's written order to hold Zamora on a $100,000 "cash only" bond, etc. – Valdez may have moved for, and perhaps would have been granted, judgment on the pleadings as to Zamora's § 1983 claims. The Court cannot, however, state on the record before it that Zamora did not act with honesty and candor. A lack of thoroughness does not equal bad faith. While more care might have reduced some of the defense attorney's fees incurred, it is speculation to guess whether this is so and to what extent. There might have still been an issue of fact precluding dismissal under rule 12(b)(6) that discovery eliminated. Besides, as Valdez himself notes, subjective bad faith is not part of the analysis for awarding attorney's fees. See Christiansburg Garment Co. v. EEOC, 434 U.S. at 421.

Valdez also characterizes Zamora's argument, raised for apparently the first time in his response to Valdez' motion for summary judgment, as frivolous in light of the law at the time he made that argument. See Application at 7. Specifically, Zamora had argued that Valdez had a duty to present to the grand jury, and not merely to the prosecutor, exculpatory evidence in Zamora's case. See Response to Summary Judgment at 5-9. The Court ultimately ruled that absolute and qualified immunity shielded Valdez from suit on the malicious prosecution and false arrest claims. See Memorandum Opinion and Order at 26-36. That the Court did not agree with Zamora's argument is not, by itself, enough to warrant attorney's fees. See Mitchell v. City of Moore, 218 F.3d at 1203.

While the Court decided that it was the prosecutor's duty, not Valdez' duty, to present qualifying exculpatory evidence to the grand jury, the Court's ruling was not the slam dunk on the malicious prosecution claim that Valdez portrays it. On the contrary, the Court initially explained that

Valdez could not escape liability merely because he was not the prosecutor or a grand juror. See Memorandum Opinion and Order at 26-27. If Zamora could have proved that Valdez withheld information from the prosecutor, then he might have been able to recover from Valdez. See id. at 28, 30. The Court further ruled against Zamora's argument – that Valdez had a duty to disclose exculpatory information to the grand jury even if the prosecutor had not done so which abrogated his absolute immunity – because Zamora could not point to any cases so holding, not because any cases had resolved this specific issue in Zamora's favor. See id. at 29-30, 29 n.2. Essentially, the Court reasoned, in the absence of case law on the subject, from the respective roles of investigator and prosecutor to conclude that Valdez had no duty in this regard. See id. at 29-30. As for qualified immunity, the Court cited in that section to only one case – from the United States Court of Appeals for the Fourth, not the Tenth, Circuit – which divided over whether a police officer could be liable for negligently failing to turn over exculpatory information to the prosecutor. See id. at 33. The Court described the law in this area as "unsettled." Id. 33-34. For the same reasons, and based on the same law, the Court granted summary judgment on Zamora's false arrest claim. See id. at 35-36.

The limited case law and the Court's extended wrestling with the issues presented by Zamora over the course of a thirty-nine page opinion, although not ending in Zamora's favor, indicate that Zamora's suit does not fall into that rare batch of cases deserving of attorney's fees to the prevailing defendant. See Mitchell v. City of Moore, 218 F.3d at 1203. While the Court eventually decided that Zamora's claim had no merit, it cannot say that, from the day that Zamora filed his § 1983 claims, and based on the evidence known to him and on the law, such claims were frivolous, unreasonable, or without factual or legal foundation. This case does not present a strong basis for the Court's award of fees beyond fees on the § 1983 claims in Valdez' official capacity. The Court will therefore award

reasonable attorney's fees on the § 1983 claims in Valdez' official capacity, but not for Zamora's other claims, for a total amount of $493.75.

**IT IS ORDERED** that the Application for Award of Attorney's Fees is granted in part and denied in part. The Court awards the Defendant Michael Valdez $493.75 in attorney's fees.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Tibo J. Chavez, Jr.
Belen, New Mexico

   *Attorney for the Plaintiff*

Michael Dickman
Santa Fe, New Mexico

   *Attorney for Defendant Michael Valdez*